**Barth A. BARON, Plaintiff,**

v.

**Dr. William C. BRYANT; James McGinley; Lanny Wayne Bryant; First Baptist Church of Norwalk dba Athletes in Action; Robert F. Robens; Daniel S. Capalia; Earl T. McDaniel; Philip Dave Thomas; Don Windust; Robert Langley; James Hart; Norris Fulfur; Walter Campbell; Eugene Hart; Lois Taylor, William F. Turner; John Does 1–10; and Doe Corporations 1–10, Defendants.**

Civ. No. 81–0005.

United States District Court, D. Hawaii.

Jan. 27, 1983.

William Meheula, A. Bernard Bays, Carlsmith, Carlsmith, Wichman & Case, Honolulu, Hawaii, for plaintiff.

Paul A. Tomar, Honolulu, Hawaii, for defendants.

William F. Turner, pro se.

## ORDER DENYING DEFENDANTS' MOTIONS FOR DISMISSAL AND SUMMARY JUDGMENT AND TO STRIKE PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR A CONTINUANCE OF HEARING

FONG, District Judge.

The matter came on for hearing on Dec. 10, 1982, on defendants' motions, filed Sept.

15, 1982 and Nov. 3, 1982 pursuant to Rules 12(b)(6), 12(f) and 56 of the Federal Rules of Civil Procedure, for dismissal and to strike plaintiff's supplemental opposition memorandum, or alternatively, for a continuance of the hearing, and summary judgment. William Meheula, Esq. and Bernard Bays, Esq. appeared on behalf of plaintiff and Paul A. Tomar, Esq. appeared on behalf of defendants Dr. William C. Bryant, James McGinley, Lanny Wayne Bryant, First Baptist Church of Norwalk dba Athletes in Action, Robert F. Robens, Daniel S. Capalia, Earl T. McDaniel and Don Windust.

On Dec. 10, 1982, following oral argument and after being fully advised in the premises, the Court denied defendants' motions for change of venue and to join persons needed for just adjudication.

AND THE COURT, having considered all of the evidence presented, having studied the various memoranda, affidavits, and exhibits submitted by counsel prior to the aforesaid hearing, having heard the testimony offered and the arguments of counsel made at the aforesaid hearing, and having studied the authorities cited by counsel and otherwise being fully informed in the premises, makes the following Findings of Facts and Conclusions of Law:

### FINDINGS OF FACT

1. On May 18, 1979, plaintiff entered into an employment agreement with Philip Dave Thomas ("Thomas") and the Marshall Islands Management Corporation ("MIMC") whereby plaintiff would become the chief executive officer of a Marshall Islands bank project ("Bank Project") in return for, *inter alia,* $60,000.00 annually for three years.

2. At the time plaintiff signed said employment contract, he had no knowledge or belief that defendants were involved with the formation of the Bank Project.

3. In early 1979, defendant Dr. William C. Bryant ("Bryant") told plaintiff that the Los Angeles Church Loan Corporation ("LACLC") would guarantee the employment agreement.

4. The underlying action is for the breach of that employment agreement.

5. On Nov. 16, 1979, plaintiff filed a complaint against LACLC in the First Circuit Court of the State of Hawaii ("State case"). *Barth Baron v. LACLC,* Civil No. 59721 (Haw.Cir. Aug. 18, 1982).

6. The identity of the defendants and their involvement as principals of the Bank Project was discovered by plaintiff through discovery in the State case in May, 1980.

7. On Dec. 2, 1980, plaintiff brought this action against the present defendants in the First Circuit Court of the State of Hawaii. *Barth Baron v. Dr. William Bryant, et al.,* Civil No. 63669 (Haw.Cir. Dec. 2, 1980).

8. Plaintiff's attempt to proceed to judgment against LACLC in the State case was delayed twice by LACLC's filing of bankruptcy, which imposed automatic stays on the proceedings.

9. In this case, plaintiff's complaint alleges that LACLC was acting as defendants' agent in the formation and organization of the bank project. Defendants are alleged to be directors, investors, settlors, and attorneys of LACLC. Liability is sought for breach of contract, conspiracy to escape liability, misrepresentation, and claims against unknown DOE defendants.

10. The employment agreement is signed by plaintiff as "employee" and Thomas as "employer". The employment contract upon which plaintiff seeks to hold defendants liable here is the same contract which plaintiff sought to hold LACLC liable in the State case.

11. On Jan. 9, 1981, the case was removed to this Court on basis of diversity jurisdiction.

12. On Aug. 13, 1982, default judgment was granted in the State case against LACLC.

13. When default judgment was granted, State Circuit Judge Ronald B. Grieg made the following findings:

(a) Through its agent Thomas, LACLC entered into a written employment contract with plaintiff, breached that agree-

ment by failing to pay plaintiff, and is liable to plaintiff for damages for breach of contract; further,

(b) Bryant, as an agent for LACLC, told plaintiff that LACLC would guarantee his employment contract, making LACLC liable for the subsequent breach of such oral promise.

14. On Sept. 15, 1982, defendants filed a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P. asserting that "[t]he pleadings show no grounds upon which plaintiff can base a claim that defendants are liable to plaintiff in the capacity of investors or settlors for breach of an employment contract."

15. Defendants are essentially asserting that settlors of a trust or investors in a project are not liable as principals under any rule of law.

16. On Oct. 4, 1982, plaintiff, in opposition, stated that the complaint alleges an agency relationship between defendants and LACLC. Paragraph 16 of the complaint alleges that defendants were principals of Thomas, Bryant, Turner and LACLC. As principals, defendants could therefore be held liable for the actions of their agents.

17. Plaintiffs also stated that defendants are liable as principals of the employment contract, their investor or settlor status merely being collateral facts supporting that theory.

18. On Sept. 15, 1982, defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on the premise of collateral estoppel, arguing that issues necessary for adjudication in this case are identical to and consistent with issues adjudicated in the state case.

19. Defendants' motion states that in view of plaintiff's default judgment, plaintiff is collaterally estopped from holding defendants liable on the employment contract. The allegations in this case contradict facts and issues which have been resolved by the default judgment.

20. More specifically, defendants argue that default judgment was based on the finding that Thomas and Bryant acted as agents for LACLC in hiring plaintiff, and, therefore, plaintiff is now estopped from claiming under Count I of the complaint that defendants are liable for breach of the same employment contract.

21. Defendants also contend that plaintiff is estopped from claiming in Count II of the complaint that Bryant is liable for guaranty of the employment contract because State court found that Bryant acted as an agent for LACLC.

22. In response, plaintiff indicated that he sought liability against defendants on the basis that they were "undisclosed principals" of LACLC.

23. In addition, plaintiff asserts that issues differ. Several alternative theories are advanced to show differences in the two cases. These theories allege defendants' liability as undisclosed or partially disclosed principals, joint venturers, co-promoters, and directors of the bank project.

24. On Nov. 3, 1982, pursuant to Rule 12(f), Fed.R.Civ.P. defendants filed a motion to strike plaintiff's supplemental memorandum in opposition to motion for summary judgment or alternatively, for a continuance of hearing so that defendants may have adequate time to respond to the alternative theories.

25. Defendants finally claim that these alternative theories are unsupported by the complaint, including their alleged positions as undisclosed or partially disclosed principals, joint venturers, co-promoters, and directors of the bank project.

26. When defendants filed their motion to strike plaintiff's supplemental memorandum in opposition to motion for summary judgment or, alternatively, for a continuance of hearing on Nov. 3, 1982, the hearing was scheduled for Nov. 19, 1982. The Court, on its own motion, continued the hearing until Dec. 10, 1982. No memorandum of law was submitted by defendants to refute plaintiff's supplemental memorandum in opposition to motion for summary judgment, or, alternatively, for a continuance of hearing notwithstanding a period of

several weeks from filing of the supplemental memorandum on Oct. 28, 1982 to the hearing of Dec. 10, 1982.

27. Under these facts, the issue is whether plaintiff is collaterally estopped from asserting liability against a principal, after plaintiff has received default judgment against the agent.

## STATEMENTS OF LAW

■ 1. Federal procedure governs applicability of the doctrine of collateral estoppel in diversity actions.

■ 2. The doctrine of collateral estoppel recognizes that the determination of facts, litigated between two parties in a proceeding, is binding on those parties in all future proceedings against each other.

3. In a subsequent action between the parties on a different claim, the judgment is conclusive as to the issues raised in the subsequent action, if these issues were litigated and determined in the prior action.

■ 4. It is, of course, settled law that for collateral estoppel to apply, the issue must have been actually litigated in the prior suit, the court must have resolved the issue, and that resolution must have been necessary to the judgment. *Public Service Co. of Indiana v. U.S.E.P.A.,* 682 F.2d 626 (7th Cir.1982).

5. Collateral estoppel in the Ninth Circuit has been defined as containing the following elements:

(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Bob's Big Boy Family Restaurant v. N.L. R.B.,* 625 F.2d 850, 854 (9th Cir.1980), *quoting Hampton v. Paramount Pictures Corp.,* 279 F.2d 100 (9th Cir.1960), *cert. denied,* 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960).

6. The estoppel urged here is defensive collateral estoppel whereby defendants seeks to estop plaintiff from relitigating issues which plaintiff previously "litigated" and prevailed against another defendant.

7. Use of defensive collateral estoppel was approved in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). *See also Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Mendoza v. United States,* 672 F.2d 1320 (9th Cir.1982).

■ 8. Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely "switching adversaries." *Santos v. State Dept. of Transp. Kauai Div.,* Haw., 646 P.2d 962 (1982) (other cases omitted.) Thus, defensive collateral estoppel gives a plaintiff a strong incentive to join all possible defendants in the first action if possible.

9. The United States Supreme Court recently concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 328, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979).

■ 10. The decision as to the applicability of the doctrine is within the discretion of the trial judge who should not allow its use when to do so would result in unfairness. *Rufenacht v. Iowa Beef Processors, Inc.,* 656 F.2d 198 (5th Cir.1981), *cert. denied* 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 462 (1982) (issues earlier determined not identical, thus it would be unfair to allow use of offensive collateral estoppel).

■ 11. Collateral estoppel is appropriate only when the identical issue has been actually litigated in a prior case.

12. The requirement of "actually litigated" does not require that the issue be thoroughly litigated. Collateral estoppel may apply no matter how slight the evidence on which a determination was made in the earlier suit. Vol. 1B J. Moore & T. Currier,

*Moore's Federal Practice* ¶ 0.441[2] (2d Ed. 1982).

██ 13. The "actually litigated" requirement under the doctrine is generally satisfied *if the parties to the original action disputed the issue* and the trier of fact resolved it. *Continental Can Co., U.S.A. v. Marshall,* 603 F.2d 590 (7th Cir.1979) [Emphasis added.].

██ 14. Moreover, the preponderant view is that preferred by *Restatement* (Second) of Judgments, especially in comments d and e to Section 27 (1982): a default judgment has no collateral estoppel effect. *See also In re Rahm,* 641 F.2d 755 (9th Cir.1981); *In re McMillan,* 579 F.2d 289 (3d Cir.1978).

15. To invoke the doctrine of collateral estoppel in default cases is not only an oppressive application of the doctrine, but it misconceives the nature of a default judgment. *See* Vol. 1B J. Moore & T. Currier, *Moore's Federal Practice* ¶ 0.444[2], at 4006–07 (2d Ed. 1982) (footnotes omitted).

██ 16. If there has been a change of circumstances or for some other reason the issues are not the same, then there is no collateral estoppel. *Rufenacht v. Iowa Beef Processors, Inc., supra.*

██ 17. A valid default judgment is res judicata of the cause of action adjudged.

██ 18. The doctrine of collateral estoppel bars relitigation of issues resolved in a prior action.

██ 19. The purposes of the doctrine of collateral estoppel are to relieve the parties of the cost and vexation of multiple lawsuits, to conserve judicial resources, and to prevent inconsistent decisions.

20. The present situation is more appropriately defined by one commentator as:

Where there is a second action between parties, or their privies, who are bound by a judgment rendered in a prior suit, but the second action involves a different claim, cause or demand, the judgment in the first suit operates as a collateral estoppel as to, but only as to, those matters or points which were in issue or controverted and upon the determination of which the initial judgment necessarily depended.

Vol. 1B J. Moore & T. Currier, *Moore's Federal Practice* ¶ 0.441[2] (2d Ed. 1982).

██ 21. A principal is undisclosed if his existence and identity are unknown to the contracting party at the time he or she enters into a contract with an agent.

██ 22. An undisclosed principal is discharged from liability on the contract if, with knowledge of the identity of the principal, the other party recovers a final judgment for breach of contract against the agent who made the contract. *Restatement* (Second) of Agency § 210 (1958); *National Marine Service, Inc. v. C.J. Thibodeaux and Co.,* 501 F.2d 940 (5th Cir.1974).

██ 23. *Restatement* (Second) of Judgments § 88(3) (Tent. Draft No. 2, 1975) provides that application of collateral estoppel may be denied if the party asserting it "could have effected joinder in the first action between himself and his present adversary."

██ 24. Trustees may act as agents under certain circumstances. The Ninth Circuit noted that it is generally agreed that both agents and trustees are fiduciaries, but there are significant differences between the two. An agent acts for and on behalf of his principal and subject to his control. A trustee acts for the benefit of the beneficiaries of the trust; he is an agent only if he agrees to hold title for the benefit and subject to the control of another. *N.L.R.B. v. United Brotherhood of Carpenters & Joiners of America,* 531 F.2d 424 (9th Cir.1976).

25. *Restatement* (Second) of Agency § 14B (1958) states that:

One who has title to property which he agrees to hold for the benefit and subject to the control of another is an *agent-trustee* and is subject to the rules of agency. (Emphasis added.)

26. Furthermore, comment f to § 14B states that:

**538**

Where a person transfers property to another, the question of whether there is an agency depends upon the amount of control agreed to be exercised by the person for whose benefit the transferee is to act, or, in doubtful situations, upon the amount of control in fact exercised. If it is agreed that the transferor is to have general supervision and can, if he chooses, direct what is, or is not, to be done, an agency is indicated.

27. The relationship of agent and principal is created by express or implied contract or by operation of law. Thus, the existence of an agency relationship may be implied from the conduct of the parties.

28. A joint venture is a business undertaking by two or more parties in which profits, losses and control are shared.

29. "Notice" pleading is all that is required in federal actions under Rule 8(c), Fed.R.Civ.P.

### CONCLUSIONS OF LAW

1. With respect to the motion to dismiss, plaintiff has set forth a viable claim that an agency relationship may exist between LACLC and defendants. Dismissal, therefore, would be improper.

2. With respect to the motion to strike plaintiff's supplemental memorandum in opposition to motion for summary judgment or, alternatively, for a continuance of hearing, this Court notes that defendants had several weeks in which to rebut the arguments submitted by plaintiff and has failed to do so. This motion is without merit.

3. There are genuine issues of material fact in this case, plaintiff has advanced several theories which sufficiently preclude the granting of summary judgment. The State case did not resolve any issues which would have collateral effect on the issues in this case so as to render summary judgment appropriate.

4. This Court will adopt the preponderant view that a default judgment should not be given conclusive effect under the doctrine of collateral estoppel.

5. This Court concludes that because the parties, (differ though they may) did not actually "litigate" the State case, not even facts which were necessary to that judgment should collaterally estop plaintiff from prosecuting the instant case. This holding is consistent with the general rules of collateral estoppel. *See*, Vol. 1B J. Moore & T. Currier, *Moore's Federal Practice* ¶ 0.419 [3–6], at 3121 (2d Ed. 1982).

6. This Court determines that collateral estoppel was not applicable for the reason that the issues earlier determined were not identical to the ones at bar and because application, under the facts and circumstances of the instant case, would be manifestly unfair.

7. With respect to the "identity of issues" or collateral estoppel premise, the posture is that the State case had already determined who the principal was and plaintiff is collaterally estopped from relitigating this issue. Defendants' position is misleading. Although the state case had determined that LACLC was the principal who was liable for the employment contract, this judgment does not collaterally estop Plaintiff from asserting that an additional principal-agent relationship may exist between the present defendants and LACLC. In short, two agency relationships are involved.

8. Paragraph 16 of the Complaint alleges that certain defendants were acting on behalf of, or as agents of, other defendants. As principals, these defendants could therefore be held liable for the actions of their agents. In all other respects, the complaint suffices to place defendants on notice.

9. With respect to the issue of misrepresentation, the state case found that Bryant had informed Plaintiff that LACLC would guarantee the contract. Although the state court found such representation was made by Bryant, there was no finding that Bryant had defrauded Plaintiff through misrepresentation or otherwise.

10. The essential question for resolution of the question of liability is whether the

Defendants sufficiently "controlled" the trustee (LACLC) to give rise to an agency relationship.

11. A trust relationship exists in this case. A trust relationship exists between Defendants and LACLC since Defendants ROBENS, McGINLEY, BRYANT and FIRST· BAPTIST CHURCH OF NORWALK all transferred funds to LACLC who held such funds in accordance with a trust agreement. The question as to whether defendants "controlled" LACLC to such an extent that would give rise to an agency relationship, and resulting liability, is best left to the trial court. The relevant fact here is that defendants *may* be liable as principals of LACLC.

12. Assuming that a principal-agent relationship exists, defendants next assert that under agency law, they cannot be liable as "undisclosed principals" because plaintiff has received his judgment against LACLC. Plaintiff obtained default judgment against LACLC knowing who the previously undisclosed principals were.

13. Defendants are essentially arguing that this doctrine or its functional equivalent should apply in the alter ego context. This Court does not feel it is necessary to determine whether plaintiff could maintain this suit if he had known of the complex relationship between LACLC and defendants at the time of default judgment. There is nothing in the record to indicate that plaintiff was aware of what transpired between LACLC and defendants until after default judgment was rendered. Lacking any proof that plaintiff knew or had reason to know that LACLC was a shell corporation when default judgment was rendered, this Court is hesitant to hold that the failure to join defendants to the State case was fatal error. *See, National Marine Service, Inc. v. C.J. Thibodeaux and Co., supra; Bob's Big Boy Family Restaurants v. N.L.R.B., supra.*

14. Defendants have not demonstrated in a clear and convincing manner that no material and genuine issue of fact remains, nor have they demonstrated that as a matter of law they are entitled to judgment in their favor.

NOW, THEREFORE,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that defendants' motions to dismiss, to strike plaintiff's supplemental memorandum in opposition to motion for summary judgment or, alternatively, for a continuance of hearing, and for summary judgment, is therefore DENIED.