Susan WEINSTEIN, et al., Plaintiffs,

v.

The ISLAMIC REPUBLIC OF IRAN, et al., Defendants.

No. 1:00CV2601(RCL).

United States District Court, District of Columbia.

Oct. 31, 2001.

Jeffrey A. Miller, Westerman Ball Ederer Miller & Sharfstein, LLP, Garden City, NY, for plaintiffs.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

Now before the Court is Plaintiffs' Ex Parte Motion for Adoption of Prior Findings Using Judicial Notice, Collateral Estoppel, or other Means. After carefully considering the plaintiffs' memoranda, the procedural posture of this case, and the applicable law, the Court hereby GRANTS in part and DENIES in part the plaintiffs' motion.

### I. Background

This is an action for wrongful death and personal injury against the Islamic Republic of Iran, the Iranian Ministry of Information and Security, and three officials of

the Iranian government.[1] The decedent, Ira Weinstein, was a United States citizen who was killed by the terrorist bombing of the Number 18 Egged bus in Jerusalem, Israel on February 25, 1996. The plaintiffs, who are family members and administrators of the estate of Ira Weinstein, filed this suit under the Foreign Sovereign Immunities Act ("FSIA") of 1976, 28 U.S.C. §§ 1602–1611. The FSIA not only eliminates foreign government's sovereign immunity in suits for money damages based on extrajudicial killings but also provides that "[a]n official employee or agent of a foreign state designated as a state sponsor of terrorism . . . shall be liable to a United States national or the national's legal representatives for personal injury or death caused by acts . . . for which the courts of the United States may maintain jurisdiction. . . ." 28 U.S.C. § 1605(a)(7); 28 U.S.C. § 1605 note, Civil Liability for Acts of State Sponsored Terrorism. The defendants have failed to enter an appearance in this matter.

The same terrorist bombing that killed Ira Weinstein was the subject of another recent case before this Court. In *Eisenfeld v. Islamic Republic of Iran,* 172 F.Supp.2d 1, 2000 WL 1918779 (D.D.C. July 11, 2000), this Court held the same defendants in the present case jointly and severally liable for the deaths of two other American citizens, Matthew Eisenfeld and Sara Duker. Both of these individuals, like Weinstein, were killed in the February 25, 1996 bombing of the Number 18 Egged bus. Before concluding that these defendants were liable for the two deaths, however, the Court made several findings of fact and conclusions of law concerning the defendants' role in the bombing. One such finding of particular importance was that Hamas, the terrorist group responsible for the bombing, "received massive material and technical support from the Defendant, the Islamic Republic of Iran." *Eisenfeld,* 172 F.Supp.2d at ——, 2000 WL 1918779 at *5. These findings enabled the plaintiffs to establish their claim or right to relief by evidence satisfactory the court as required by 28 U.S.C. § 1608 in the case of a default judgment.[2] The plaintiffs in *Eisenfeld* proceeded in the same manner as a bench trial and the Court's ruling was based on the sworn testimony and documents admitted into evidence.

In their motion the plaintiffs request that the Court adopt certain findings of fact and conclusions of law made in *Eisenfeld* in the instant action. These findings would help the plaintiffs in the present case—as they did the plaintiffs in *Eisenfeld*—sustain their burden under 28 U.S.C. § 1608(e). The plaintiffs assert that the Court can adopt these findings "on at least four separate grounds: (i)

---

1. According to the complaint, defendant Ayatollah Ali Hoseini Khamenei is, and at all times relevant hereto was, the Supreme Leader of Iran; defendant Ali Akbar Hashemi–Rafsanjani is, and at all times relevant hereto was, the former President of Iran; and defendant Ali Fallahian–Khuzestani is, and at all times relevant hereto was, the former Minister of Information and Security for Iran.

2. The defendants did not enter an appearance in the case. *Eisenfeld,* 172 F.Supp.2d at ——, 2000 WL 1918779 at * 1. The Court entered defendants' default on November 11, 1999. Pursuant to 28 U.S.C. § 1608(e), however, the Court had to make additional findings prior to entering a judgment by default against the defendants. The FSIA explicitly provides that "[n]o judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence that is satisfactory to the court." 28 U.S.C. § 1608(e). In the July 11, 2000 opinion, the Court found by clear and convincing evidence that the plaintiffs had established the claims against the defendants.

judicial notice; (ii) collateral estoppel; (iii) the Court can accept affidavit testimony from the exact same expert witnesses who testified in the *Eisenfeld* case . . .; or (iv) the Court can accept a certified copy of the transcript of the testimony given in the *Eisenfeld* case." The Court will address each of these options.

## II. Discussion

### A. Judicial Notice

■ The plaintiffs first assert that the Court should adopt certain findings of fact and conclusions of law made in *Eisenfeld* by means of judicial notice. Judicial notice "is a process by which a court takes recognition of a fact in the absence of formal proof." *U.S. v. Neill*, 964 F.Supp. 438, 446 (D.D.C.1997); Advisory Committee Note to Fed.R.Ev. 201 (recognizing that "[i]f particular facts are outside the area of reasonable controversy, this process [of establishing adjudicative facts through the introduction of evidence] is dispensed with as unnecessary."). It is not appropriate, however, for a court to take judicial notice of all facts. Rule 201 of the Federal Rules of Evidence specifically provides that a "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Ev. 201(b). For example, in *Booth v. Fletcher*, the court took judicial notice of the fact

that the Appellant, Edward K. Campbell, was the retired Chief Justice of the Court of Claims of the United States. *Booth*, 101 F.2d 676, 678 (D.C.Cir.1938). In *SEC v. Bilzerian*, this Court took judicial notice of the fact that a petition for rehearing had been filed with the United States Court of Appeals for the Eleventh Circuit. *Bilzerian*, 112 F.Supp.2d 12, 15 n. 3 (D.D.C.2000). Furthermore, in *Washington Mobilization Committee v. Cullinane*, the court took judicial notice of the fact that from April 22 until May 6, 1971, 14,517 people were arrested in D.C., approximately 3,749 of the cases were terminated administratively, and only 871 out of the original 14,517 went to trial. *Cullinane*, 400 F.Supp. 186, 201–02 (D.D.C.1975), *rev'd* on other grounds, 566 F.2d 107 (D.C.Cir.1977). In all of these cases the facts of which the courts took judicial notice were straightforward and easy to ascertain.[3] They were, as required by Rule 201, not subject to reasonable dispute because they were capable of accurate and ready determination. Thus, no party would dispute, for instance, that Edward K. Campbell was the former Chief Justice of the Court of Claims of the United States. In addition, there does not appear to have been any reason for making the parties present evidence to prove the facts of which the courts ultimately took judicial notice.

■ The Court finds that it is inappropriate for it to take judicial notice of the facts and conclusions of law in *Eisenfeld* in the present case. At the outset, the Court

---

**3.** Plaintiffs also cite several cases where courts took judicial notice of the factual record in other cases. *See, e.g., Campbell v. McGruder*, 580 F.2d 521 (D.C.Cir.1978); *Weil, et al. v. Markowitz, et al.*, 829 F.2d 166 (D.C.Cir.1987). These cases are not distinguishable from the ones cited above. In these cases, like the others, the courts took judicial notice of facts that were "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be ques-

tioned." Fed.R.Ev. 201(b). For instance, in *Campbell*, the court took judicial notice of the fact that a particular prison was overcrowded. Moreover, *in Weil*, the court took judicial notice of the fact that a party had realty assets worth approximately $575,000. These facts are comparable to the ones of which the courts took judicial notice in other cases. The only difference is that they were established initially during another court proceeding.

is not sure why in the instant case the plaintiffs want it not only to take judicial notice of facts that it found in *Eisenfeld* but also certain conclusions of law. It is clearly not appropriate for the Court to use the doctrine of judicial notice to make conclusions of law in the present case based on the conclusions of law made in *Eisenfeld*. Federal Rule of Evidence 201 explicitly restricts the doctrine of judicial notice to findings of fact. In addition, the Court holds that the findings of fact in *Eisenfeld*, such as that "Hamas and its agents received massive material and technical support from the Defendants, the Islamic Republic of Iran" and that the Iranian Ministry of Information and Security "acted as a conduit for the Islamic Republic of Iran's provision of funds to Hamas and training to the terrorists" are not facts of which it is appropriate for the Court to take judicial notice. Unlike the facts of which the courts took judicial notice in the cases cited above, these facts are not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." To be sure, in *Eisenfeld* the facts were only proven after several witnesses testified before the court and the appropriate documentation was admitted into evidence. Additionally, if the defendants entered an appearance in the instant case, or in *Eisenfeld* for that matter, they almost certainly would dispute the accuracy of those particular facts. It is of no significance that the Court ultimately found those facts proven by clear and convincing evidence in *Eisenfeld*. If that were the standard, then courts could take judicial

notice of virtually every fact ultimately proven in a case.

Moreover, it is not clear based on the language of 28 U.S.C. § 1608(e) whether the plaintiffs can satisfy their burden of establishing their claim or right to relief by having the court simply take judicial notice of the facts necessary to sustain the burden. When a court takes judicial notice of a fact it relieves the party of presenting evidence to prove the fact. Such action by the court in this particular case appears to be in conflict with the statutory framework created by Congress in the FSIA in cases of default judgments. In such cases the statute explicitly provides that it is up to the plaintiff to establish by evidence satisfactory to the court that his claim is meritorious. By taking judicial notice of the facts that the plaintiffs must prove in order to sustain their burden under 28 U.S.C. § 1608(e), the Court could very well be circumventing the precise point of that statutory provision. Based on this uncertainty and for the foregoing reasons, the Court will not take judicial notice of the findings of fact and conclusions of law in *Eisenfeld* in the present case.

### B. Collateral Estoppel

The plaintiffs next argue that the defendants should be collaterally estopped from relitigating the findings of fact and conclusions of law made by the Court in *Eisenfeld*. In particular, they argue that this Court could adopt the *Eisenfeld* findings based on the doctrine of offensive collateral estoppel. Pls.' supplemental mem. at 14. "Under the doctrine of offensive collateral estoppel or issue preclusion,[4]

---

4. For purposes of this opinion, the terms collateral estoppel and issue preclusion are used interchangeably. They should not, however, be confused with the terms res judicata or claim preclusion. As the Supreme Court has explained, "[u]nder the doctrine of res judica-

ta, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the

a defendant is precluded from relitigating identical issues that the defendant litigated and lost against another plaintiff."[5] *Jack Faucett Associates, Inc. v. AT & T,* 744 F.2d 118, 124 (D.C.Cir.1984). Collateral estoppel thus "serves to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication." *U.S. v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984). In *Parklane Hosiery Company v. Shore,* which is the seminal case on the use of the doctrine, the Supreme Court observed that several commentators have expressed reservations about the application of offensive collateral estoppel. *Parklane,* 439 U.S. 322, 329–30, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The Court went on to describe several potential problems with the doctrine, including that it "does not promote judicial economy in the same manner as defensive use does" and that "it may be unfair to a defendant." *Id.* Despite these reservations the Court concluded "that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." *Id.* In accordance with this ruling, the United States Court of Appeals for the D.C.Circuit has held that while the doctrine is detailed, difficult, and potentially dangerous, it is within the discretion of the trial judge whether to apply it. *Jack Faucett Associates,* 744 F.2d at 124–126.

■ The D.C.Circuit has recognized, however, three conditions that must be satisfied before a party can use issue preclusion to prevent another party from relitigating an issue previously decided. *Id.* at 125. Those conditions are (1) the issue must have been actually litigated, that is contested by the parties and submitted for determination by the court; (2) the issue must have been actually and necessarily determined by a court of competent jurisdiction in the first trial; and (3) preclusion in the second trial must not work an unfairness. *Id.* (citing *Otherson v. DOJ,* 711 F.2d 267, 273 (D.C.Cir.1983)).

■ After a full review of the applicable law and the plaintiffs' memoranda, the Court finds that there are three reasons why it should decline to hold the defendants in this case estopped from disputing the findings of fact and conclusions of law in *Eisenfeld.* The first reason is that default judgments, like the one is *Eisenfeld,* are normally not given preclusive effect under the collateral estoppel doctrine because the issues in the cases have not been actually litigated. *Meyer v. Rigdon,* 36 F.3d 1375, 1379 (7th Cir.1994); *Lee v. U.S.,* 124 F.3d 1291, 1296 (Fed.Cir.1997). *But see Overseas Motors, Inc. v. Import Motors Limited, Inc.,* 375 F.Supp. 499 (E.D.Mich.1974) (finding that "default judgments do constitute res judicata for purposes of both claim preclusion and issue preclusion (collateral estoppel)").[6] Ac-

---

judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 327 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (citing 1B J. Moore, Federal Practice ¶ 0.405[1], pp. 622–624 (2d ed.1974)).

**5.** Defensive use of issue preclusion, in contrast, occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff previously lost against another defendant. *Carr v. District of Columbia,* 646 F.2d 599, 605 n. 24 (D.C.Cir.1980).

**6.** The plaintiffs state that "[s]ignificantly, the *Overseas Motors* decision has been cited by Courts in this circuit in decisions involving collateral estoppel." The Court has reviewed these cases and finds that they do not support the *Overseas Motors* decision for the proposition of law at issue in this case. *See, e.g.,*

cording to the Restatement (Second) of Judgments, which the majority of federal courts follow, "[i]n the case of a judgment entered by confession, consent, or default, none of the issues [are] actually litigated." Restatement (Second) of Judgments § 27 comment e (1982).[7] *See also United States v. Bailey*, 957 F.2d 439, 443 (7th Cir.1992) (noting that "[w]hen a motion is granted, as here, because of another party's default, the issue is not litigated."). In reaching this conclusion, courts and the Restatement (Second) both have noted that "[t]here are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action." *Id.* Moreover, it has also been suggested that "[t]o invoke the doctrine of collateral estoppel in default cases is not only an oppressive application of the doctrine, but it misconceives the nature of a default judgment." *Baron v. Bryant*, 556 F.Supp. 531, 537 (D.Hawai'i 1983) (citing Vol. 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.444[2], at 4006–07 (2d Ed.1982)).

■ Despite this general rule, there are specific types of cases where courts have given default judgments a preclusive effect. For example, in the context of bankruptcy proceedings, the courts have found that by enacting section 523(a)(11) Congress sought to expand the preclusive effect given certain prior actions in bankruptcy discharge exception proceedings. *Meyer v. Rigdon*, 36 F.3d 1375, 1379–80 (7th Cir.1994). Before giving those default

judgments a preclusive effect, however, those courts held that the statute "alters the common law collateral estoppel rules with respect to default judgments, settlement agreements, and certain administrative agency decisions." *Id.* Moreover, in *Gibbs v. Air Canada*, the U.S. Court of Appeals for the Eleventh Circuit noted that "[t]he general rule with regard to the preclusive effect of findings made in connection with a judgment for which contractual indemnity is sought is that an indemnitee is bound in an action against the indemnitor by all findings without which the original judgment against him could not have been rendered." *Gibbs*, 810 F.2d 1529, 1535 (11th Cir.1987). In both of these instances—and in all of the cases cited by the plaintiffs in their memoranda—the courts had specific reasons for giving the default judgments a preclusive effect. In the context of this particular case the Court does not find any such reason.

The plaintiffs do, however, argue that the default judgment entered in *Eisenfeld* is distinguishable from other default judgments because the plaintiffs in that case had to present evidence satisfactory to the court, pursuant to 28 U.S.C. § 1608(e), before the court entered the judgment of default. Specifically, the plaintiffs assert that when the *Eisenfeld* plaintiffs established their claim or right to relief during the bench trial they actually litigated the underlying issues in the case. While the plaintiffs are correct that default judgments under the FSIA require additional

---

*Synanon Church v. U.S.*, 820 F.2d 421, 426 (D.C.Cir.1987) (citing the case in its discussion of the *Evergreens* rule, which provides that no fact decided in the first litigation can conclusively establish anything for purposes of the second action except an ultimate fact.); *Nixon v. Richey*, 513 F.2d 430, 438 n. 75 (D.C.Cir.1975) (citing the case for the proposition that the majority of states follow the federal rule regarding the effect that pending

appeals have on final judgments for purposes of collateral estoppel.). These are the two cases cited by plaintiffs in their supplemental memorandum.

7. This particular provision of the Restatement was cited approvingly by the D.C.Circuit in *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1551 n. 20 (D.C.Cir.1987).

findings than in the case of ordinary default judgments, the Court does not think these additional requirements warrant, based on the specific facts and procedural posture of this case, removing it from the general rule of not giving preclusive effect to default judgments. This finding is supported by Wright, Miller, and Cooper's Federal Practice and Procedure text. In it they conclude that "[o]n balance, denial of issue preclusion also seems appropriate in cases that involve a one-sided hearing after default for failure to answer. Such hearings may be held in the court's discretion to inquire into matters of liability, and may be required to establish the nature of the relief to be given. Although such hearings may involve both presentation of proof and decision of the issues presented, the procedure is apt to be too remote from full adversary contest to support issue preclusion." Wright, Miller, and Cooper, Federal Practice and Procedure: Jurisdiction § 4442, at 376 (1981). In *Eisenfeld*, the plaintiffs were able to establish by clear and convincing evidence the findings of fact and conclusions of law that the plaintiffs in the instant case want the Court to adopt. The plaintiffs in *Eisenfeld* did so, however, in a non-adversarial setting. That is, the defendants did not enter an appearance at the proceeding and did not challenge the plaintiffs' witnesses or documentation in any way. Professors Wright, Miller, and Cooper argue that findings of fact made during the course of this type of one-sided hearing should not be given a preclusive effect. The Court agrees with this position based on the facts of this particular case.

■ The second reason why the Court declines to give preclusive effect to its findings of fact and conclusions of law in *Eisenfeld* in the instant case is that to do so would all but eliminate any chance of the defendants ever making an appearance

in this matter and comparable cases. Default judgments, while never favored in any case, are especially disfavored against foreign sovereigns. *First Fidelity Bank v. The Government of Antigua*, 877 F.2d 189, 196 (2d Cir.1989) (citing Restatement (Third) of Foreign Relations, § 459 comment c & Reporter's Note 1). As a result of this policy courts have gone to great lengths to avoid default judgments against foreign sovereigns or to permit those judgments to be set aside. *Id.* Moreover, the D.C.Circuit has recognized that "it is in the interest of United States' foreign policy to encourage foreign states to appear before our courts in cases brought under the FSIA." *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1551–52 (D.C.Cir.1987). In *Practical Concepts, Inc.* the court observed that the FSIA was enacted in the first place "to govern the sensitive matter of the amenability of a foreign nation to suit in the United States." *Id.* at 1544. The D.C.Circuit also has found that "an intolerant elevation of form over substance ... will almost certainly undermine the confidence of foreign states in the fairness of our legal system." *Foremost–McKesson, Inc. v. The Islamic Republic of Iran*, 905 F.2d 438, 445 (D.C.Cir.1990). In declining to give a preclusive effect to the Court's findings in *Eisenfeld* in the instant case, the Court is not providing the defendants with special treatment. Rather, the Court is simply recognizing that in exercising its discretion it must be particularly sensitive to suits involving foreign states, even those found to be state sponsors of terrorism. Thus, the Court must be cautious before issuing a ruling that will, in all likelihood, lead to another default judgment against a foreign state. In making this decision the Court also notes that the rules governing the use of offensive collateral estoppel between private litigants do not apply when the United States government is a party.

*AFL—CIO v. Federal Labor Relations Authority*, 835 F.2d 1458, 1462 (D.C.Cir. 1987) (citing *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984)).

■ The third reason why the Court declines to adopt the findings made *Eisenfeld* using the doctrine of collateral estoppel is that the defendants in the instant case, like in *Eisenfeld*, have failed to make an appearance. Finding that the defendants are not, as a matter of law, precluded from relitigating the issues that were decided in *Eisenfeld* should not significantly delay the resolution of this case or result in additional hardship for the plaintiffs. Courts should consider fairness to both parties in deciding whether to apply the doctrine of offensive collateral estoppel. *Nations v. Sun Oil Company*, 705 F.2d 742, 745 (5th Cir.1983). Collateral estoppel is a "doctrine of equitable discretion to be applied only when the alignment of the parties and the legal and factual issues raised warrant it." *Id.* The Court finds that in the instant case it is reasonable, fair, and well within its discretion not to find the defendants estopped from litigating the findings made by the Court in *Eisenfeld.*

### C. Affidavit testimony from the same expert witnesses who testified in Eisenfeld

■ The third manner in which the plaintiffs suggest the Court can adopt the findings made in *Eisenfeld* is to accept affidavits from the experts who testified in the earlier case. The Court agrees. In *Commercial Bank of Kuwait v. Rafidain Bank*, the U.S. Court of Appeals for the Second Circuit found that "when the United States or a foreign sovereign defaults, the district court must determine whether plaintiff's allegations are supported by the evidence. While in some cases this will require a hearing ... Rule 55(e) [and 28 U.S.C. § 1608(e) ] do not require an evidentiary hearing if one would ordinarily not have been held, nor do the rule[s] require the court to demand more or different evidence than it would ordinarily receive in order to make its decision." *Commercial Bank of Kuwait v. Rafidain Bank.* 15 F.3d 238, 242 (2d Cir.1994) (finding that "evidence, in the form of affidavits and exhibits" were "sufficient" to satisfy the requirements of 28 U.S.C. § 1608(e).). More recently, in *International Road Federation v. Democratic Republic of the Congo*, the court found that "[b]ecause the defendant has not appeared and has presented no defense 'the Court will accept as true plaintiff's uncontroverted factual allegations,' which are supported by the documentary and affidavit evidence." *International Road Federation v. Democratic Republic of the Congo*, 131 F.Supp.2d 248, 252 (D.D.C.2001); *see also Sealift Bulkers, Inc. v. Republic of Armenia*, 965 F.Supp. 81, 87 (D.D.C.1997) (noting that "[w]ithout the benefit of Armenia's own analysis, the Court finds that plaintiff's argument, along with the myriad exhibits, declarations, transmittals, and invoices accompanying plaintiff's motion for entry of default judgment, have provided 'evidence satisfactory to the court' " under the FSIA.). Based on these rulings, the Court finds that live testimony establishing the facts already found by the Court in *Eisenfeld* is not necessary in this case. Affidavits by the same witnesses that testified in the earlier proceeding are more than sufficient for purposes of the instant matter.

### D. Certified copy of the transcript in the Eisenfeld case

■ The fourth way in which the plaintiffs suggest that the Court can adopt the findings made in *Eisenfeld* in the instant

case is by accepting a certified copy of the transcript from the earlier case. The Court agrees based on the reasons provided in the above section. That is, the Court finds that the plaintiffs can, in lieu of filing with the Court affidavits from the same witnesses that testified in *Eisenfeld*, submit a certified copy of the transcript containing the witnesses' testimony during the *Eisenfeld* case in order to establish those facts.

### III. Conclusion

For the foregoing reasons the Court finds that the plaintiffs' motion should be, and hereby is, GRANTED in part and DENIED in part. The Court will not take judicial notice of the facts established in *Eisenfeld* or find, as a matter of law, that the defendants are estopped from relitigating those issues. Accordingly, the Court will not adopt the findings of fact and conclusions of law made in *Eisenfeld* in the instant case at this time. The Court finds that the plaintiffs can, however, either file affidavits from the same witnesses that testified in *Eisenfeld* or submit a certified copy of the transcript from *Eisenfeld* containing the testimony of those individuals.

SO ORDERED.