Leonard I. EISENFELD,
et al., Plaintiffs,

v.

THE ISLAMIC REPUBLIC OF
IRAN, et al., Defendants.

No. Civ. 98–1945 RCL.

United States District Court,
District of Columbia.

July 11, 2000.

Steven R. Perles, Washington, DC, for Plaintiffs.

The Islamic Republic of Iran, the Iranian Ministry of Information and Security, Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi–Rafsanjani, Ali Fallahian–Khuzestani, and John Does, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LAMBERTH, District Judge.

This wrongful death action arises from an act of state-sponsored terrorism. Defendants have not entered an appearance in this matter. This Court entered Defendants' default on November 11, 1999, pursuant to 28 U.S.C. § 1608(e) and Fed. R.Civ.P. 55(a). Notwithstanding indicia of Defendants' willful default, however, this Court is compelled to make further inquiry prior to entering a judgment by default against Defendants. As with actions against the federal government, the Foreign Sovereign Immunities Act ("FSIA") requires that a default judgment against a foreign state be entered only after a plaintiff "establishes his claim or right to relief by evidence that is satisfactory to the Court." 28 U.S.C. § 1608(e); *see also Flatow v. The Islamic Republic of Iran, et al.*, 999 F.Supp. 1, 6 (1998).

Plaintiffs bring this action pursuant to the FSIA, which establishes federal court jurisdiction over foreign states and their officials, agents and employees in certain enumerated instances. In particular, the FSIA creates a federal cause of action for personal injury or wrongful death resulting from acts of state-sponsored terrorism. This Court has engaged in a careful review of the evidence presented in this case, in light of *Flatow*, 999 F.Supp. 1, and the other reported cases under the antiterrorism provisions of the FSIA. *See, e.g., Daliberti v. Republic of Iraq*, 97 F.Supp.2d 38 (D.D.C.2000); *Anderson v. The Islamic Republic of Iran*, 90 F.Supp.2d 107 (D.D.C.2000); *Cicippio v. The Islamic Republic of Iran*, 18 F.Supp.2d 62 (D.D.C. 1998); *Alejandre v. Republic of Cuba*, 996 F.Supp. 1239 (S.D.Fla.1997). Based upon the extensive evidence presented, the Court concludes that the Plaintiffs have

established their claim and right to relief as set forth below.

## I. FINDINGS OF FACT

The Court heard testimony on May 1–2, 2000 and May 22, 2000. The Plaintiffs proceeded in the manner of a bench trial and the following findings of fact are based upon the sworn testimony and documents entered into evidence in accordance with the Federal Rules of Evidence. Plaintiffs have "established [their] claim or right to relief by evidence that is satisfactory to the Court," as required by 28 U.S.C. § 1608(e). This Court finds the following facts to be established by clear and convincing evidence, which would have been sufficient to establish a prima facie case in a contested proceeding:

(1) Plaintiff Dr. Leonard I. Eisenfeld, a resident of and domiciliary of the State of Connecticut, is the father of decedent Matthew Eisenfeld. He brings this action in his own right, as Administrator of the Estate of Matthew Eisenfeld, and on behalf of decedent's heirs-at-law, Vicki Eisenfeld, decedent's mother, Amy Eisenfeld, decedent's sister, and the Plaintiff, and on behalf of the Estate of Matthew Eisenfeld.

(2) Matthew Eisenfeld was born on February 5, 1971, in the United States of America, and was at birth and remained until his death, a citizen of the United States.

(3) Arline Duker, a resident and domiciliary of the State of New Jersey, is the mother of the decedent, Sara Rachel Duker. She brings this action in her own right, as Administrator of the Estate of Sara Rachel Duker, and on behalf of decedent's heirs at law, decedent's sisters, Tamara Duker and Ariella Duker, and the Plaintiff, and on behalf of the Estate of Sara Rachel Duker.

(4) Sara Rachel Duker was born on August 13, 1973, in the United States of America and was at birth and remained until her death, a citizen of the United States.

(5) Matthew Eisenfeld was a graduate of Yale University and was a student at the Jewish Theological Seminary at its facility in Israel beginning in the Fall of 1995 and was so engaged at the time of his death.

(6) Sara Rachel Duker was a graduate of Barnard College of Columbia University and was a student in a postgraduate program at the Hebrew University of Jerusalem beginning in the fall of 1995 and was so engaged at the time of her death.

(7) On February 25, 1996, Matthew Eisenfeld and Sara Rachel Duker boarded the Number 18 Egged bus in Jerusalem to journey to the archeological dig at Petra, Jordan.

(8) At or about 6:45 a.m. Jerusalem time, as the bus came to a stop on Yafo Street at the intersection with Sarae Yisrael Street, Magid Wardah, a passenger on the bus, detonated explosives which, at the direction of Hamas, he had carried onto the bus concealed in a travel bag, resulting in the complete destruction of the bus and hurling debris in excess of 100 meters.

(9) As a result of the explosion, Matthew Eisenfeld and Sara Rachel Duker suffered severe injuries, which resulted in their deaths.

(10) Matthew Eisenfeld was treated on the scene by emergency medical personnel immediately after the explosion, however, he expired from his wounds on February 25, 1996.

(11) Sara Rachel Duker expired from her wounds on the scene on February 25, 1996.

(12) The testimony of Dr. Jehuda Hiss, who performed the postmortem examination, established that death was not instantaneous for either Matthew Eisenfeld or Sara Rachel Duker, and that the mechanism of death in both cases was injury to the lungs caused by explosion and further that there was a period of pain and suffering of several minutes following the explosion.

(13) To a reasonable degree of medical certainty, Matthew Eisenfeld and Sara Rachel Duker, suffered extreme bodily pain and suffering for several minutes following the explosion before death.

(14) Plaintiff, Dr. Leonard I. Eisenfeld, and his wife, Vicki, were informed of the attack and of the death of his son, Matthew, on February 25, 1996, when the United States Department of State contacted them.

(15) Plaintiff, Arline Duker, was informed of the attack and of the death of her daughter, Sara Rachel, on February 25, 1996, when the United States Department of State contacted her.

(16) Hamas immediately claimed credit for the attack on the bus, which was verified in the statements to Israeli Police given by Hassan Salamah, the Hamas member who planned the attack. Salamah later corroborated Hamas' responsibility for the attack in a CBS Television, *60 Minutes* interview.

(17) Hamas, the popular name for the Islamic Resistance Movement, is an organization supported by The Islamic Republic of Iran, dedicated to the waging of Jihad, or a holy war employing terrorism with the object of seizing the leadership of the Palestinian people and asserting sovereignty and the rule of the Muslim religion over all of Palestine, including all territory of the State of Israel.

(18) Hamas acknowledges support from Iran in the amount of $15,000,000.00 per month, funds which support both terrorism and a broad range of welfare activities as part of its program.

(19) The testimony of Dr. Reuven Paz and Dr. Patrick Clawson established conclusively that the Defendant, The Islamic Republic of Iran, and the other Defendants, knew of the purpose and objectives of Hamas, which were set forth in detail in the Charter of Hamas introduced into evidence as Plaintiff's Exhibit # 1.

(20) The conclusion of Dr. Paz and Dr. Clawson that The Islamic Republic of Iran had given material support to Hamas was further supported by the statements of Hassan Salamah to the Israeli Police [1] and to a CBS reporter during a *60 Minutes* interview in which Hassan Salamah projected himself as relaxed and satisfied with his supervision of the murder of 50 people, including the decedents. In those statements, Hassan Salamah explained that after joining Hamas he went to the Sudan for indoctrination training, following which he was sent to Syria, from where he was transported by Iranian aircraft to a base near Tehran. Osamah Hamdan, the official representative of Hamas in Iran, met him in Tehran. For three months, Hassan Salamah was trained at the base outside Tehran by Iranian military instructors, assisted by translators, in the use of explosives, automatic weapons, hand grenades, use of R.P.G. and LAW missiles, terrorist methods of ambush, deactivation of land mines for extraction of explosive material, and trigger mechanism for various explo-

---

1. Plaintiffs' Exhibit # 6 is a detailed 20–page series of statements by Hassan Salamah describing his training by Iran, including the trigger mechanism utilized on the explosive charge used in this attack, in an attack at Ashkelon, and a second attack on the Number 18 Egged bus approximately one week later.

sive materials. He sketched out two similar mechanisms, one of which was used in an operation at Gush Qatif in the Gaza Strip in 1995. According to the statements, all of his training in the use of explosives was received in Iran. The statements also include mention of meeting with Mohammed Deif,[2] commander of the military, terrorist wing of Hamas. Following completion of training, Hassan Salamah was sent back into Israel to carry out the series of terrorist attacks, which included the attack on the Number 18 Egged Bus on February 25, 1996.

(21) Defendant, the Islamic Republic of Iran, is a foreign state and has been designated a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979, 50 U.S.C.App. § 2405(j) continuously since January 19, 1984.

(22) As further testified to by Dr. Paz and Dr. Clawson, Defendants, Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi–Rafsanjani, and Ali Fallahian–Kuzestani were high officials of defendant, The Islamic Republic of Iran, on February 25, 1996, whose approval would be necessary to carry out the economic commitment of Iran to Hamas and the training of terrorists in Iran.

(23) Defendant the Iranian Ministry of Information and Security is the Iranian intelligence service, functioning both within and beyond Iranian territory. Acting as an agent of the Islamic Republic of Iran, the Iranian Ministry of Information and Security performed acts within the scope of its agency, within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C.A. § 1605 note, which caused the deaths of Matthew Eisenfeld and Sara Rachel Duker, in that said Defendant acted as a conduit for the Islamic Republic of Iran's

provision of funds to Hamas and training to the terrorists under the direction of Hamas, including Hassan Salamah.

(24) The deaths of Matthew Eisenfeld and Sara Rachel Duker were caused by a willful and deliberate act of extrajudicial killing in that they were the result of an explosion of material carried aboard the Number 18 Egged bus on February 25, 1996 and intentionally detonated by Majid Wardah at approximately 6:45 a.m. Jerusalem time, acting under instructions from Hassan Salamah, who was acting as an agent of Hamas.

(25) As a result of the death of Matthew Eisenfeld, his Estate suffered a loss of accretions that could have been expected to occur during the course of his anticipated life expectancy in the amount of $1,415,584.00.

(26) As a result of the death of Sara Rachel Duker, her Estate suffered a loss of accretions that would have been expected to occur during the course of her anticipated life expectancy in the amount of $1,245,418.00.

(27) As the result of the deaths of Matthew Eisenfeld and Sara Rachel Duker their parents and their surviving siblings have suffered and will continue to suffer severe mental anguish and the loss of society.

## II. CONCLUSIONS OF LAW

### A. *The Foreign Sovereign Immunities Act Controls This Action.*

 As this Court noted in *Flatow,* an action brought against a foreign state, its intelligence service acting as its agent, and three of its officials, acting in their official capacities, must be brought under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602–1611. *Flatow,*

---

**2.** Palestinian Authority Police apprehended Mohammad Deif in May 2000.

999 F.Supp. at 10. Indeed, the FSIA must be applied in every action involving a foreign state defendant. *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 489, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983); 28 U.S.C. § 1330. That is, the sole bases for subject matter jurisdiction in an action against a foreign state defendant are the FSIA's enumerated exceptions to immunity. *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 434, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). Accordingly, this Court lacks jurisdiction over this matter unless it falls within one of the FSIA's enumerated exceptions to foreign sovereign immunity. *See Saudi Arabia v. Nelson,* 507 U.S. 349, 355, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). The FSIA has been construed to apply to individuals for acts performed in their official capacity on behalf of either a foreign state or its agency or instrumentality. *El–Fadl v. Central Bank of Jordan,* 75 F.3d 668, 671 (D.C.Cir.1996) (citing *Chuidian v. Philippine Nat. Bank,* 912 F.2d 1095, 1099–1103 (9th Cir.1990)). In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, which abrogates the immunity of foreign states for their sponsorship of terrorist acts. Pub.L. 104–132, Title II, § 221(a), (April 24, 1996), 110 Stat. 1241, codified at 28 U.S.C.A. § 1605 (West 1997 Supp.). Specifically, Congress amended the FSIA to create an exception to the immunity of those foreign states officially designated as state sponsors of terrorism by the Department of State, if the foreign state so designated commits a terrorist act, or provides material support and resources to an individual or entity which commits such a terrorist act, which results in the death or personal injury of a United States citizen. *See* 28 U.S.C. § 1605(a)(7). Based on the foregoing authority, the Court concludes that it has jurisdiction over the subject matter of this action.

## B. *Personal Jurisdiction*

 This Court has in personam jurisdiction over foreign state sponsors of terrorism under 28 U.S.C. § 1605(a)(7). As was noted in *Flatow,* the FSIA provides that personal jurisdiction over defendants will exist where Plaintiff establishes the applicability of an exception to immunity pursuant to 28 U.S.C. § 1604, § 1605, or § 1607, and service of process has been accomplished pursuant to 28 U.S.C. § 1608. *Flatow,* 999 F.Supp. at 19. Plaintiffs have demonstrated by clear and convincing evidence that § 1605(a)(7) of the FSIA applies in this action, and service of process was accomplished with the assistance of Swiss Embassy in Tehran. A court must also determine whether the notice provided by service under § 1608 passes constitutional muster. *Id.* Here, as in *Flatow,* the Court concludes that a foreign state that causes the death of a United States national through an act of state-sponsored terrorism has the requisite "minimum contacts" with the United States so as not to offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 326, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Flatow,* 999 F.Supp. at 23. The Court concludes that it may exercise in personam jurisdiction over the Defendants.

## C. *The Actions of the Defendants*

 Under the FSIA, a foreign state may be liable when there is injury from a terrorist act, that act was perpetrated by the designated state or an agent receiving material support from the designated state, the provision of support was an act authorized by the foreign state, the foreign state has been designated as one providing material support to terrorism, either the victim or the plaintiff was a United States national at the time of the terrorist act,

8

and similar conduct by the United States, its agents, officials or employees within the United States would be actionable. In this case, all of these elements have been demonstrated by clear and convincing evidence. 28 U.S.C. § 1605(a)(7); 28 U.S.C. § 1605 note.

The action of the Hamas agent in detonating an explosive charge on the Number 18 Egged bus on February 25, 1996 fulfills the required definition from the Torture Victim Protection Act of 1991 and the Court finds that it was "a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all judicial guarantees which are recognized as indispensable by civilized peoples . . . ."

There is no question that Hamas and its agents received massive material and technical support from the Defendant, The Islamic Republic of Iran. Indeed, the sophistication demonstrated in the use of a relatively small explosive charge with such devastating effect indicates that it is unlikely that this attack could have resulted in such loss of life without the assistance of regular military forces, such as those of Iran. Further, Iran was, as of February 25, 1996, a nation designated by the United States Department of State as providing material support for terrorism. Both Sara Rachel Duker and Matthew Eisenfeld were American nationals at the time of the bus attack on February 25, 1996.

Finally, it is beyond question that if officials of the United States, acting in their official capacities, provided material support to a terrorist group to carry out an attack of this type, they would be civilly liable and would have no defense of immunity. 42 U.S.C. § 1983; *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

D. *Damages*

(1) *Wrongful Death*. The Plaintiffs produced comprehensive testimony from Dr. Jerome Paige detailing the loss of accretions to the estate of each person. These calculations were conservative, particularly in light of the outstanding academic careers of Sara Rachel Duker and Matthew Eisenfeld. The Court concludes as a matter of law that judgment should be entered for this element of damages for the Estate of Sara Rachel Duker in the amount of $1,245,418.00, and for this element of damages for the Estate of Matthew Eisenfeld in the amount of $1,415,584.00.

(2) *Survival Action—Pain and Suffering*. The testimony of Dr. Jehuda Hiss described in some detail the manner of death when injuries of this type are sustained. While the period of suffering was mercifully brief, compensation is required and the Court therefore concludes as a matter of law that an appropriate amount of compensatory damages for pain and suffering for Sara Rachel Duker is $1,000,000.00, and that an appropriate amount of compensatory damages for pain and suffering for Matthew Eisenfeld is $1,000,000.00.

(3) *Solatium*. The Foreign Sovereign Immunities Act provides for an award for solatium where physical injury results in death. As this Court noted in *Flatow*, 999 F.Supp. at 29, damages for solatium belong to the individual heir personally for injury to the feelings and loss of decedent's comfort and society. The unexpected quality of a death may be taken into consideration in gauging the emotional impact to those left behind. In this case the impact upon the parents and siblings was devastating. There was no reason to expect violence to come on these students' trip to visit an archeological dig.

Counsel argued, and the Court agrees, that one of the aspects of terrorism is its targeting of the innocent with the intent to create maximum emotional impact. This type of action deserves a reply in damages that will fully compensate for the truly terrible emotional suffering of the surviving parents and siblings. The Court concludes as a matter of law that the following amounts are appropriate compensation for this element of damages: Arline Duker: $5,000,000.00; Vicki Eisenfeld: $5,000,000.00; Dr. Leonard I. Eisenfeld: $5,000,000.00; Tamara Duker: $2,500,000.00; Ariella Duker: $2,500,000.00; Amy Eisenfeld: $2,500,000.00.

(4) *Punitive Damages.* Punitive damages are awarded to punish a defendant for particularly egregious conduct, and to serve as a deterrent to future conduct of the same type. They require an assessment by the Court of the wealth of the defendant and character of the defendant. *Flatow,* 999 F.Supp. at 32. Since the *Flatow* case, Iran's economic situation has greatly improved with the upturn in world oil prices, as detailed in the testimony of Dr. Clawson. According to Dr. Clawson, in 1996, the amount spent on terrorism by Iran was approximately $100,000,000.00, a substantial increase from 1995, the year of the attack in the *Flatow* case. The Court finds that a total award of punitive damages equal to three times Iran's annual expenditure in 1996 on terrorism-$300 million-will serve to deter future attacks such as the one that killed Sara Rachel Duker and Matthew Eisenfeld. While plaintiffs urge the Court to award separate punitive damages awards of $500 million for each decedent, the Court finds that a single award of $300 million, divided equally between the two decedents' estates, to be appropriate, given

that their deaths resulted from the same act of terrorism.

## III. CONCLUSION

This Court possesses subject matter jurisdiction over this action and personal jurisdiction over Defendants. Plaintiff has established to this Court's satisfaction, pursuant to 28 U.S.C. § 1608(e), and by clear and convincing evidence, that Defendants, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, Ayatollah Ali Hoseini Khamenei, former President Ali Akbar Hashemi–Rafsanjani, and former Minister Ali FallahianKhuzestani, are jointly and severally liable for all damages awarded by this Court to the Plaintiffs Dr. Leonard I. Eisenfeld and Arline Duker, in their own right, and as Administrators of the Estates of Matthew Eisenfeld and Sara Rachel Duker and on behalf of each decedent's heirs-at-law, for their provision of material support and resources to a terrorist group that caused the extrajudicial killing of Matthew Eisenfeld and Sara Rachel Duker.

The court is aware that, to this date, the *Flatow* plaintiffs have been unable to collect on their judgment, and the court views with considerable dismay the fact that the rule of law is being frustrated in that case. Nevertheless, the court cannot shrink from its duty to declare the applicable law in this case, and must express its conviction that ultimately this judgment will not be a mere Pyrrhic victory for the Eisenfeld and Duker families. Their courage and steadfastness in pursuing this litigation, and their efforts to do something to deter more tragic deaths and suffering of innocent Americans at the hands of these terrorists, are to be commended and admired.

A separate order shall issue this date.

10

## ORDER AND JUDGMENT

For the reasons set forth in the accompanying Findings of Fact and Conclusions of Law, it is this *11th* day of *July*, 2000

ORDERED that judgment be and it is entered on behalf of Plaintiff, Arline Duker, as Administrator of the Estate of Sara Rachel Duker against Defendants, The Islamic Republic Of Iran, the Iranian Ministry of Information and Security, Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi–Rafsanjani and Ali Fallahian–Khuzestani, jointly and severally, for loss of accretions to the Estate of Sara Rachel Duker in the amount of ONE MILLION TWO HUNDRED FORTY FIVE THOUSAND FOUR HUNDRED AND EIGHTEEN DOLLARS ($1,245,418.00), said amount to be apportioned in accordance with the intestate laws of the State of New Jersey, and it is further

ORDERED that judgment be and it is entered on behalf of Plaintiff, Leonard I. Eisenfeld, as Administrator of the Estate of Matthew Eisenfeld against Defendants, The Islamic Republic Of Iran, the Iranian Ministry of Information and Security, Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi–Rafsanjani and Ali Fallahian–Khuzestani, jointly and severally, for loss of accretions to the Estate of Matthew Eisenfeld in the amount of ONE MILLION FOUR HUNDRED FIFTEEN THOUSAND FIVE HUNDRED EIGHTY FOUR ($ 1,415,584.00), said amount to be apportioned in accordance with the intestate laws of the State of Connecticut, and it is further

ORDERED that judgment be and it is entered on behalf of Plaintiff, Arline Duker, as Administrator of the Estate of Sara Rachel Duker against Defendants, The Islamic Republic Of Iran, the Iranian Ministry of Information and Security, Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi–Rafsanjani and Ali Fallahian–Khuzes-

tani, jointly and severally, for the conscious pain and suffering of Sara Rachel Duker in the amount of ONE MILLION DOLLARS ($1,000,000.00), and it is further

ORDERED that judgment be and it is entered on behalf of Plaintiff, Leonard I. Eisenfeld, as Administrator of the Estate of Matthew Eisenfeld against Defendants, The Islamic Republic Of Iran, the Iranian Ministry of Information and Security, Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi–Rafsanjani and Ali Fallahian–Khuzestani, jointly and severally, for the conscious pain and suffering of Matthew Eisenfeld in the amount of ONE MILLION DOLLARS ($1,000,000.00), and it is further

ORDERED that judgment be and it is entered upon application of Plaintiff, Arline Duker, as Administrator of the Estate of Sara Rachel Duker, on behalf of Sara Rachel Dukers surviving parent and surviving siblings, against Defendants, The Islamic Republic Of Iran, the Iranian Ministry of Information and Security, Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi–Rafsanjani and Ali Fallahian–Khuzestani, jointly and severally, for solatium, in the total amount of TEN MILLION DOLLARS ($10,000,000.00), allocated as follows: to Decedent's mother, Arline Duker, FIVE MILLION DOLLARS ($5,000,000.00); to Decedent's sister Tamara Duker, TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00); to Decedent's sister, Ariella Duker, TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000 .00); and it is further

ORDERED that judgment be and it is entered on application of Plaintiff, Leonard I. Eisenfeld, as Administrator of the Estate of Matthew Eisenfeld, on behalf of Matthew Eisenfeld's surviving parents and

sibling, against Defendants, The Islamic Republic Of Iran, the Iranian Ministry of Information and Security, Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi–Rafsanjani and Ali Fallahian–Khuzestani, jointly and severally, for solatium, in the total amount of TWELVE MILLION FIVE HUNDRED THOUSAND DOLLARS ($12,500,000.00), allocated as follows: to Decedent's mother, Vicki Eisenfeld, FIVE MILLION DOLLARS ($5,000,000.00); to Decedent's father, Leonard I. Eisenfeld, FIVE MILLION DOLLARS ($5,000,000.00); to Decedent's sister, Amy Eisenfeld, TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00), and it is further

ORDERED that judgment be and it is entered on behalf of Plaintiff, Arline Duker, as Administrator of the Estate of Sara Rachel Duker against Defendants, The Islamic Republic Of Iran, the Iranian Ministry of Information and Security, Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi–Rafsanjani and Ali Fallahian–Khuzestani, jointly and severally, for punitive damages in the amount of ONE HUNDRED FIFTY MILLION DOLLARS ($150,000,000.00), and it is further

ORDERED that judgment be and it is entered on behalf of Plaintiff, Leonard I. Eisenfeld, as Administrator of the Estate of Matthew Eisenfeld against Defendants, The Islamic Republic Of Iran, the Iranian Ministry of Information and Security, Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi–Rafsanjani and Ali Fallahian–Khuzestani, jointly and severally, for punitive damages in the amount of ONE HUNDRED FIFTY MILLION DOLLARS ($150,000,000.00), and it is further

ORDERED that the Clerk of Court shall cause a copy of this Order and Judgment and the accompanying Findings of Fact and Conclusions of Law to be translated into Farsi and transmitted to the United States Department of State for diplomatic service upon the Defendants in accordance with the provisions of 28 U.S.C. § 1608(a)(4), with the costs of translation to be paid by the Plaintiffs.

SO ORDERED.