# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 11, 2016         Decided May 21, 2019

No. 14-5105

JAMES OWENS, ET AL.,
APPELLEES

v.

REPUBLIC OF SUDAN, MINISTRY OF EXTERNAL AFFAIRS AND
MINISTRY OF THE INTERIOR OF THE REPUBLIC OF THE SUDAN,
APPELLANTS

———

Consolidated with 14-5106, 14-5107, 14-7124, 14-7125,
14-7127, 14-7128, 14-7207, 16-7044, 16-7045, 16-7046,
16-7048, 16-7049, 16-7050, 16-7052

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:01-cv-02244)
(No. 1:08-cv-01377)
(No. 1:10-cv-00356)
(No. 1:12-cv-01224)
(No. 1:08-cv-01349)
(No. 1:08-cv-01361)
(No. 1:08-cv-01380)

———

*Christopher M. Curran*, *Nicole Erb*, *Claire A. DeLelle*, and *Celia A. McLaughlin* were on the supplemental brief for appellants. *Bruce E. Fein* entered an appearance.

*Stuart H. Newberger*, *Clifton E. Elgarten*, *Aryeh S. Portnoy*, *Emily Alban*, *John L. Murino*, *Matthew D. McGill*, *Lochlan F. Shelfer*, *Steven R. Perles*, *Edward B. MacAllister*, *John Vail*, *Thomas Fortune Fay*, *Jane Carol Norman*, *Michael J. Miller*, and *David J. Dickens* were on the supplemental brief for appellees. *Annie P. Kaplan*, *John D. Aldock*, and *Stephen A. Saltzburg*, entered appearances.

Before: HENDERSON and ROGERS, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*: The court originally heard this appeal during the 2016-17 term. *See* 864 F.3d 751 (2017). In the resulting order we certified to the D.C. Court of Appeals the following question regarding the plaintiffs' intentional infliction of emotional distress (IIED) claims: "Must a claimant alleging emotional distress arising from a terrorist attack that killed or injured a family member have been present at the scene of the attack in order to state a claim for intentional infliction of emotional distress?" The D.C. Court of Appeals has now answered the question in the negative. *See Republic of Sudan v. Owens*, 194 A.3d 38, 39 (2018). Sudan nonetheless asks us not to accept the D.C. court's answer on the grounds that it encroaches upon the federal government's foreign affairs power, impermissibly discriminates against certain foreign sovereigns, and violates the presumption against retroactivity. For the reasons that

follow, we reject Sudan's arguments and affirm the default judgments with respect to the plaintiffs' IIED claims.

## I. Background

The underlying facts and the history of this litigation are recited at length in our initial opinion. 864 F.3d at 762-69. Here we briefly summarize and highlight matters relevant to Sudan's present challenge.

### A. Litigation History

The cases in this consolidated appeal are among the many lawsuits arising out of the August 1998 bombings of the U.S. embassies in Nairobi, Kenya and Dar es Salaam, Tanzania, which were committed by al Qaeda. *Id.* at 762. Beginning in 2001, victims of the bombings and their family members brought suits against the Republic of Sudan and the Islamic Republic of Iran for providing material support to al Qaeda. *Id.* at 765-66. They were able to do so through the so-called "terrorism exception" in the Foreign Sovereign Immunities Act (FSIA), which covers suits against state sponsors of terrorism for "personal injury or death" arising out of certain acts. *Id.* at 762; *see* 28 U.S.C. § 1605A(a).

The original terrorism exception was codified as a subsection of 28 U.S.C. § 1605, alongside all the other exceptions to the jurisdictional immunity of foreign states. 864 F.3d at 763. Under that scheme, a plaintiff suing a foreign sovereign for acts of state-sponsored terrorism had to rely solely upon state substantive law; this is known as the "pass-through" approach. *Id.* at 764. In 2008 the Congress moved the terrorism exception from § 1605 to the newly enacted § 1605A. National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 1083, 122 Stat. 3,

338-44 (2008). Unlike the other exceptions in the FSIA, the § 1605A terrorism exception not only withdraws sovereign immunity and grants the federal courts jurisdiction over qualifying cases, it also provides a substantive cause of action against foreign sovereigns. 864 F.3d at 765; *see* § 1605A(c). In addition, as we held in our earlier opinion, plaintiffs can continue to bring pass-through state law claims through the jurisdictional grant in § 1605A. 864 F.3d at 808; *see* § 1605A(a).

Because Sudan failed to appear and defend against the claims, in May 2003 the district court entered an order of default. Over the next decade, the litigation took many twists and turns, producing a tangle of related actions and appeals. *See* 864 F.3d at 765-68. Finally, in 2014, the district court entered final judgments in favor of the plaintiffs. The total damages awarded came to $10.2 billion, $4.3 billion of which were punitive damages. *Id.* at 767.

In April 2015 Sudan filed Rule 60(b) motions to vacate the default judgments; it also appealed each case, but we stayed those appeals pending resolution of the motions to vacate. *Id.* at 768. In those motions, Sudan raised both jurisdictional and nonjurisdictional arguments, none of which persuaded the district court. Sudan appealed the district court's denials of its motions to vacate, and those appeals were consolidated with the earlier appeals, all of which were addressed in our prior opinion. *Id.*

**B. This Appeal**

In our 2017 decision, we affirmed the default judgments in most respects. We exercised our discretion to reach the merits of Sudan's argument for invalidating the family members' state law claims for IIED on the ground that "D.C.

tort law requires a plaintiff to be present at the scene of a defendant's outrageous and extreme conduct in order to recover for IIED," even though it is nonjurisdictional and would ordinarily have been forfeited by Sudan's default. *Id.* at 809-11. We did not resolve that issue, however, because we were "genuinely uncertain whether the D.C. Court of Appeals would apply the presence requirement in the Second Restatement of Torts to preclude recovery for IIED by family members absent from the scene of a terrorist bombing." *Id.* at 812. Instead we certified the question to that court. *Id.*

In September 2018, the D.C. Court of Appeals answered the certified question, in a word: "No." *Sudan*, 194 A.3d at 39. On its way to doing so, the court first adopted § 46(2)(a) of the Second Restatement as the general rule for IIED claims under D.C. law. *Id.* at 41. That is, it held that when emotional distress is caused by conduct directed at a member of a plaintiff's family, the plaintiff must be "present at the time" of the conduct in order to make out an IIED claim. *Id.* The court then carved out an exception to the general rule for cases brought under § 1605A, which it referred to as "the FSIA Terrorism Exception" to the presence requirement. *Id.* at 42. Sudan now urges us not to apply the exception in this case.

## II. Analysis

Sudan makes three arguments why this court should not apply the D.C. court's ruling here: It (1) "impermissibly encroaches upon the federal foreign affairs powers"; (2) violates the non-discrimination principle in the FSIA, i.e., the principle that a foreign state is liable "to the same extent as a private individual under like circumstances"; and (3) would, if applied in this case, increase Sudan's liability for past conduct, in contravention of the presumption against

retroactivity. All of these arguments depend upon the assumption that the exception crafted by the D.C. Court of Appeals "creates a new rule of D.C. law applicable only to certain foreign states." We reject this assumption, wherefor all Sudan's challenges fail.

## A. Forfeiture

First, we pause to consider the plaintiffs' contention that Sudan forfeited its arguments because it failed to raise them in its initial appeal to this court and before the D.C. Court of Appeals. "The rule in this circuit is that litigants must raise their claims on their initial appeal and not in subsequent hearings following a remand." *Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 717 (D.C. Cir. 1986) (finding "appellants waived their constitutional claims" against the Supreme Court of Indiana's answer to this court's certified question). In this case, Sudan made its arguments for the first time in its petition for rehearing to the D.C. Court of Appeals.

In *Eli Lilly* "all of the legal rulings that appellants find to be constitutionally offensive were stated with some precision in the District Court's memorandum opinion." *Id.* Not so here. As explained in greater detail below, Sudan's arguments are predicated upon the way in which the D.C. Court of Appeals characterized the substantive legal rule it crafted in its opinion, as contrasted with this court's formulation of the certified question. Sudan cannot reasonably be faulted for having failed to bring these issues to our attention during its initial appeal; they did not arise until the D.C. Court issued its opinion in response to the certified question. We therefore conclude Sudan's objections are not forfeit and proceed to address them on the merits.

**B. Merits**

Again, each of Sudan's arguments proceeds from the premise that the D.C. Court of Appeals crafted a new rule of substantive law applicable only to foreign states lacking immunity under § 1605A and not to other possible defendants in terrorism cases. Sudan's first argument invokes the foreign affairs preemption doctrine, which provides that, because the Constitution entrusts foreign policy exclusively to the National Government, even if those subject to the state law could comply with both it and federal law, the "imposition of any state law create[s] a conflict with federal foreign policy interests." *Saleh v. Titan Corp.*, 580 F.3d 1, 13 (D.C. Cir. 2009). Here, says Sudan, "by fashioning a new rule of law targeting a subset of foreign states ... the D.C. Court of Appeals ... makes an impermissible foray into the delicate realm of foreign affairs." Appellant's Br. 5.

Next, Sudan contends the D.C. court's rule violates the principle that foreign states lacking immunity "shall be liable in the same manner and to the same extent as a private individual under like circumstances," as codified in 28 U.S.C. § 1606, because it "applies only to foreign states lacking immunity under § 1605A." Appellant's Br. 7. In our prior opinion, we explained that § 1606 covers claims brought under § 1605 but not under § 1605A. 864 F.3d at 809. Sudan's argument is that the Congress nevertheless intended to preserve the non-discrimination requirement for § 1605A cases that use the pass-through approach. Finally, Sudan argues in the alternative that, if the non-discrimination principle "no longer applies by reason of § 1605A's enactment," then the "backdoor lifting" of that limitation on Sudan's liability violates the presumption against retroactivity, as set out in *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994). Appellant's Br. 12-13.

In short, Sudan's objections to the D.C. court's exception to the presence requirement all presume that D.C law treats state actors differently from non-state actors. Because we reject Sudan's interpretation of the D.C. court's holding, we do not reach the substantive question whether it would be impermissible for the D.C. court to single out certain foreign sovereigns for IIED liability in terrorism cases.

We formulated the question certified to the D.C. Court of Appeals as follows:

> Must a claimant alleging emotional distress arising from a terrorist attack that killed or injured a family member have been present at the scene of the attack in order to state a claim for intentional infliction of emotional distress?

*Owens*, 864 F.3d at 812. That court responded, "For the reasons that follow, we answer this question 'No.'" *Sudan*, 194 A.3d at 39.

The D.C. court went on, however, to restate the certified question and to describe its holding with specific reference to the FSIA. The court restated the certified question as follows: "The D.C. Circuit has asked us to determine whether the caveat [to § 46] applies to the scenario presented here — an IIED case where the defendant is a state sponsor of terrorism denied sovereign immunity by the FSIA." *Id.* at 43. Then the court made clear that its opinion was addressed to "IIED cases where the jurisdictional elements of § 1605A are satisfied and the plaintiff's severe distress arises from a terrorist attack that killed or injured a member of his or her immediate family." *Id.* at 45; *see also id.* at 44 ("Our holding excuses the presence

requirement only when plaintiffs demonstrate that [the] predicates [to § 1605A] are met").

The D.C. Court of Appeals has previously asserted its "latitude ... to consider nondesignated questions and to reformulate, if necessary, the questions as certified." *District of Columbia v. Beretta*, 872 A.2d 633, 641 (D.C. 2005) (cleaned up).  Several circuits have, for their part, allowed as how their "phrasing of the [certified] question is not intended to restrict the scope or inquiry by" the state supreme court to which it is directed. *Tillman v. R.J. Reynolds Tobacco*, 254 F.3d 1302, 1308 (11th Cir. 2001); *see also Mineral County v. Walker River Irrigation Dist.*, 900 F.3d 1029, 1034 (9th Cir. 2018); *Penguin Group, Inc., v. American Buddha*, 640 F.3d 497, 499-500 (2d Cir. 2011); *Lamar Homes v. Mid-Continent Casualty Co.*, 428 F.3d 193, 201 (5th Cir. 2005).  Here, the D.C. court narrowed its inquiry to cases brought under § 1605A of the FSIA, even though our certified question asked more generally about a "terrorism exception."

Nevertheless, we do not construe the D.C. court's opinion as creating a disparity between state and non-state actors.  We agree with the plaintiffs that the D.C. court was simply "reasoning by reference to the facts of the case before it."  Because the court was not faced with a terrorism case involving a non-state actor, it was not necessary to decide whether the exception would apply there.  We see no reason to anticipate that, in an appropriate case, the D.C. court would refuse to extend the exception to a private actor, such as al Qaeda.

Indeed, as the appellees point out, the D.C. court's reasoning as to the purposes of the presence requirement "was not limited to cases involving foreign sovereigns."  The court identified three objectives of the presence requirement: to (1)

"shield defendants from unwarranted liability"; (2) "ensure that compensation is awarded only to victims with genuine claims of severe emotional distress"; and (3) "provide a judicially manageable standard that protects courts from a flood of IIED claims." 194 A.3d at 43 (cleaned up). The court then concluded the first and second objectives are inapplicable "in this special context" for reasons true of "acts of terrorism" more generally. *Id.* at 42. The court explained that "acts of terrorism are, by their very nature, designed to create maximum emotional impact, particularly on third parties" and "the risk of trivial or feigned claims is exceedingly low when the anguish derives from a terrorist attack." *Id.* at 43. Hence, although the D.C. court's opinion addresses only FSIA cases, its rationale invites application of the exception to terrorism cases against non-state actors.

Under these circumstances, we decline Sudan's invitation to construe the D.C. Court of Appeals's rule as singling out certain foreign sovereigns.

### III. Conclusion

We therefore affirm the district court's judgments as to the plaintiffs' IIED claims to the extent they are not inconsistent with our initial panel opinion at 864 F.3d 751 (2017).

*So ordered.*